## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ADAM FRANCHI, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>ACACIA RESEARCH CORPORATION, MAUREEN O'CONNELL, ALFRED V. TOBIA, JR., CLIFFORD PRESS, ISAAC T. KOHLBERG, KATHARINE WOLANYK, JONATHAN SAGAL, and LUIS RINALDINI, )<br><br>Defendants. ) | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from defendants' dissemination of a materially incomplete proxy statement (the "Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") on December 10, 2019.

2.      On November 18, 2019, Acacia Research Corporation's ("Acacia" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused Acacia to enter into a securities purchase agreement (the "Purchase Agreement") with Starboard Value LP ("Starboard") and certain of its affiliates (collectively, the "Buyers").

3.      Pursuant to the terms of the Purchase Agreement, Acacia issued to the Buyers: (i) an aggregate of 350,000 shares of Series A Convertible Preferred Stock (the "Preferred

Shares"); and (ii) warrants to purchase up to 5,000,000 shares of the Company's common stock, in exchange for a cash payment of $35 million.

4.      The Proxy Statement recommends that Acacia's stockholders vote on proposals (together, the "Proposals") for the:

> Approval, for purposes of Nasdaq Rules 5635(b) and 5635(d), as applicable, of (i) the voting of the Preferred Shares on an as-converted basis and (ii) the issuance of the maximum number of shares of our common stock issuable in connection with the potential future (A) conversion of the Preferred Shares and (B) exercise of Warrants, in each case, without giving effect to the Exchange Cap (as defined in the Proxy Statement) set forth in the Certificate of Designations (as defined in the Proxy Statement) and in the Series A Warrants, issued pursuant to the Securities Purchase Agreement, dated November 18, 2019, by and among the Company, Starboard Value and the investors listed therein; and

> Approval of an amendment to our Amended and Restated Certificate of Incorporation to increase the total number of authorized shares of our common stock by 200,000,000 shares, or from 100,000,000 shares to 300,000,000 shares.

5.      If the Company's stockholders approve the Proposals, the Company will issue to Starboard warrants to purchase up to 100,000,000 shares of common stock, and may issue up to $365 million in senior secured notes.

6.      However, as set forth below, the Proxy Statement omits material information, which renders the Proxy Statement false and misleading.

7.      Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Acacia common stock.

12.     Defendant Acacia is a Delaware corporation and maintains its principal executive offices at 4 Park Plaza, Suite 550, Irvine, California 92614.  Acacia's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "ACTG."

13.     Defendant Maureen O'Connell is Chairman of the Board of Acacia.

14.     Defendant Alfred V. Tobia, Jr. is Chief Investment Officer and a director of Acacia.

15.     Defendant Clifford Press is Chief Executive Officer and a director of Acacia.

16.     Defendant Isaac T. Kohlberg is a director of Acacia.

17.     Defendant Katharine Wolanyk is a director of Acacia.

18.     Defendant Jonathan Sagal is a director of Acacia.

19.     Defendant Luis Rinaldini is a director of Acacia.

20.     The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public

stockholders of Acacia (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of November 18, 2019, there were approximately 50,343,305 shares of common stock of Acacia outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of Acacia and the Purchase Agreement*

28.     Acacia invests in intellectual property and related absolute return assets, and engages in the licensing and enforcement of patented technologies.

29.     On November 18, 2019, the Individual Defendants caused Acacia to enter into the Purchase Agreement with the Buyers.

30.     According to the November 18, 2019 press release issued by the Company:

Acacia Research Corporation ("we", "Acacia" or "the Company") (Nasdaq: ACTG) today announced a strategic partnership with Starboard Value LP (together with its affiliates, "Starboard"), a New York-based investment adviser with a focused and fundamental approach to investing in publicly traded U.S. companies. This financing (the "Transaction") will provide Acacia with access to up to $400 million of new capital for strategic investments and acquisitions, and Starboard will work directly with Acacia to identify and execute on these opportunities.

Under the terms of the agreements:

- Starboard has made a $35 million investment in Acacia, acquiring 350,000 shares of Series A Convertible Preferred Stock (the "Preferred Shares") convertible at $3.65 per share, a 38% premium to Acacia's 30-day trailing volume-weighted average price (VWAP), and warrants to purchase five million shares of common stock (the "Series A Warrants") with an exercise price of $3.65 per share.

- Acacia may issue up to $365 million in senior secured notes due 2027 with a cash interest rate of 6% (the "Notes") to Starboard, the proceeds of which may be used to fund investment opportunities and strategic acquisitions approved from time to time by the Company and Starboard.

- Promptly upon the receipt of Acacia stockholder approval (as described below), Starboard will purchase warrants (the "Series B Warrants") to purchase up to 100 million shares of the Company's common stock at a cash exercise price of $5.25 per share or by the cancellation of Notes, to the extent the Notes have been issued, at an exercise price of $3.65 per share.

- Acacia has reserved the right to offer existing Acacia common stockholders the opportunity to purchase up to $100 million in notes and 27 million warrants on substantially the same terms of the Notes and Series B Warrants.

- Jonathan Sagal, Managing Director of Starboard Value, has joined Acacia's Board of Directors, and Starboard Value has certain other board appointment rights, as described below. . . .

Transaction Overview

Under the terms of the Transaction agreements, Starboard has purchased 350,000 Preferred Shares, with a liquidation preference of $100 per share and an initial cash dividend rate of 3%, and Series A Warrants to purchase up to five million shares of common stock, resulting in proceeds to Acacia of $35 million. The conversion price of the Preferred Shares and the exercise price of the Series A Warrants is $3.65 (subject to price-based anti-dilution adjustments), a 38% premium to Acacia's trailing 30-day VWAP. These proceeds will be held in escrow until used for an approved investment. Following the use of the proceeds to fund a strategic investment or acquisition, the dividend rate on the Preferred Shares will increase to 8%.

The Transaction also establishes a structure by which the Company and Starboard may agree on approved investments from time to time to be financed by Notes in an aggregate principal amount up to $365 million with a 6% annual interest rate.

Acacia will seek stockholder approval for (i) the Company's issuance of the securities described in the Transaction agreements (including shares of the Company's common stock underlying the Preferred Stock and warrants) without giving effect to any limitations under the rules of the Nasdaq Stock Market LLC, and (ii) an amendment to its Certificate of Incorporation to increase the number of authorized shares of common stock to 300,000,000 shares.

After the receipt of stockholder approval, Starboard will also purchase Series B Warrants to purchase up to 100 million shares of common stock at a cash exercise price of $5.25 (subject to price-based anti-dilution adjustments) until 30 months after their issuance date. The Series B Warrants may also be exercised by the cancellation of outstanding Notes at an exercise price of $3.65 per share at any time after the Notes have been issued until the maturity date of the Notes.

The Preferred Shares, Notes, and Warrants all contain limitations on conversion or exercise, such that Starboard may not convert or exercise its securities into greater than 4.89% of Acacia's outstanding common stock. The Preferred Shares contain and the Notes, if and when issued, will contain, affirmative and negative covenants customary for transactions of this type, including but not limited to, limitations on

the Company's ability to incur debt, grant liens on its assets, make certain distributions in respect of its equity and make certain investments.

Acacia's Board of Directors intends to offer $100 million of notes and warrants to purchase up to 27 million shares of common stock, with substantially identical terms as the Notes and Series B Warrants held by Starboard, to Acacia's common stockholders. The Company, subject to the Board's discretion, intends to effect this through one or more rights offerings to stockholders of record on each date that an approved investment to be funded by the sale of Notes to Starboard is announced.

The Company has entered into a Governance Agreement with Starboard whereby Jonathan Sagal of Starboard has joined the Board of Directors and has the right to appoint two additional directors to the Board of Directors. The Board has established a Strategic Committee, consisting of Clifford Press, Al Tobia, and Jonathan Sagal, to work with Starboard to identify and execute on strategic investments and acquisition opportunities.

Acacia has also entered into a Registration Rights Agreement with Starboard, granting Starboard certain registration rights with respect to the securities issued and issuable in the Transaction.

31.     Pursuant to the terms of the Purchase Agreement, Acacia issued to the Buyers:  (i) 350,000 shares of Preferred Shares; and (ii) warrants to purchase up to 5,000,000 shares of the Company's common stock, in exchange for a cash payment of $35 million.

***The Proxy Statement Omits Material Information***

32.     On December 10, 2019, defendants filed the Proxy Statement with the SEC.

33.     The Proxy Statement recommends that Acacia's stockholders vote on the Proposals for the:

Approval, for purposes of Nasdaq Rules 5635(b) and 5635(d), as applicable, of (i) the voting of the Preferred Shares on an as-converted basis and (ii) the issuance of the maximum number of shares of our common stock issuable in connection with the potential future (A) conversion of the Preferred Shares and (B) exercise of Warrants, in each case, without giving effect to the Exchange Cap (as defined in the Proxy Statement) set forth in the Certificate of Designations (as defined in the Proxy Statement) and in the Series A Warrants, issued pursuant to the Securities Purchase Agreement, dated November 18, 2019, by and among the Company, Starboard Value and the investors listed therein; and

Approval of an amendment to our Amended and Restated Certificate of Incorporation to increase the total number of authorized shares of our common stock by 200,000,000 shares, or from 100,000,000 shares to 300,000,000 shares.

34.     If the Company's stockholders approve the Proposals, the Company will issue to Starboard warrants to purchase up to 100,000,000 shares of common stock, and may issue up to $365 million in senior secured notes.

35.     However, as set forth below, the Proxy Statement omits material information.

36.     The Proxy Statement fails to disclose the financial projections and analyses that the Individual Defendants considered and relied upon in coming to their decision to approve the Purchase Agreement.

37.     The Proxy Statement fails to disclose whether the Individual Defendants engaged a financial advisor in connection with the Purchase Agreement.  If the Individual Defendants engaged a financial advisor, the Proxy Statement fails to disclose the terms of the financial advisor's engagement, including: (i) the amount of compensation the financial advisor has received or will receive in connection with its engagement; (ii) whether the financial advisor has performed past services for any parties to the Purchase Agreement or their affiliates; (iii) the timing and nature of such services; and (iv) the amount of compensation received by the financial advisor for providing such services.

38.     The Proxy Statement fails to disclose a fair summary of the process and negotiations leading up to the execution of the Purchase Agreement.

39.     The Proxy Statement fails to disclose whether the Individual Defendants considered any alternatives to the Purchase Agreement.

40.     The omission of the above-referenced material information renders the Proxy Statement false and misleading.

41.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Acacia's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Acacia**

42.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Acacia is liable as the issuer of these statements.

44.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within Acacia, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

45.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposals.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

47.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposals.

48.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

49.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

50.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51.     The Individual Defendants acted as controlling persons of Acacia within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Acacia and participation in and/or awareness of Acacia's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Acacia, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Acacia, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposals.  They were thus directly involved in the

making of the Proxy Statement.

54.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

B.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

C.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 13, 2020                              **RIGRODSKY & LONG, P.A.**

                                                     By:  */s/ Gina M. Serra*
                                                           Brian D. Long (#4347)
**OF COUNSEL:**                                            Gina M. Serra (#5387)
                                                           300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                                           Wilmington, DE 19801
Richard A. Maniskas                                        Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                            Facsimile: (302) 654-7530
Berwyn, PA 19312                                           Email: bdl@rl-legal.com
Telephone: (484) 324-6800                                  Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                                     *Attorneys for Plaintiff*